ALLEN S. ALTERISI *v.* COMMISSIONER
OF CORRECTION
(AC 33935)

Beach, Robinson and Borden, Js.

Argued May 23—officially released August 27, 2013

*Deren Manasevit*, assigned counsel, for the appellant (petitioner).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (respondent).

BORDEN, J. In this habeas corpus appeal, the petitioner, Allen S. Alterisi, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus that was based on claims of ineffective assistance of appellate and prior habeas counsel. He claims that the habeas court improperly concluded that he had not established either claim. We affirm the judgment of the habeas court.

In 1997, this court affirmed the petitioner's conviction on five counts of sexual assault in the first degree in violation of General Statutes § 53a-70, and six counts of risk of injury to a child in violation of General Statutes § 53-21. *State* v. *Alterisi*, 47 Conn. App. 199, 702 A.2d 651 (1997). In 2000, the habeas court, *Hon. Anthony V. DeMayo*, judge trial referee, denied his first habeas corpus petition, in which he had claimed ineffective assistance of his trial counsel, John Donovan, and, in 2002, this court affirmed that judgment. *Alterisi* v. *Commissioner of Correction*, 67 Conn. App. 625, 789 A.2d 489 (2002). In 2010, the petitioner brought this second petition, in three counts, alleging, respectively, ineffective assistance of his trial counsel, ineffective assistance of his prior habeas counsel, and ineffective assistance of his appellate counsel on direct appeal. The court, *T. Santos, J.*, dismissed the first count as successive and the case went to trial on the remaining two counts. The court, *Bright, J.*, rendered judgment denying the petition. This appeal followed.[1]

In the underlying criminal case, this court stated the facts as follows. "In 1990, the [petitioner] was living in Meriden with his girlfriend, A, and her two sons, B, age five, and D, age three. During the two years that the [petitioner] lived with A, he often took care of the children while she worked as a waitress in the evenings.

---

[1] Judge Bright granted certification to appeal.

In January, 1992, A lost custody of the boys due to her substance abuse and psychiatric problems. The children were sent to live with A's sister and brother-in-law, who became the boys' custodial guardians. B and D remained at the home of their aunt and uncle in Meriden for four years.

"When the boys arrived at the home of their aunt and uncle, they exhibited unusual behavior. The aunt and uncle and school officials noticed that the boys were very aggressive, punching and hitting each other and other adult males in the groin. This behavior and other incidents prompted the aunt and uncle to take the boys to a child therapist at the Child Guidance Clinic in Meriden (clinic).

"In February, 1992, the boys began attending weekly counseling sessions with Steven Thermes, a social worker at the clinic. In individual counseling sessions, both children expressed a strong fear of the [petitioner]. They stated that he hit them, locked them out of the house in the cold weather, and forced them to urinate and defecate outdoors. In February, 1993, the boys first disclosed to Thermes that they had been sexually assaulted by the [petitioner]. Both boys revealed that, among other actions, the [petitioner] had touched their genitals with his hand. The children appeared relieved to have disclosed this information to Thermes. The following week, Thermes reported the allegations to the Meriden police.

"On February 26, 1993, the children were separately interviewed by Detective Gary Brandl of the sex crimes unit of the Meriden police department. B and D both asserted that the [petitioner] had undressed them and touched their genitals on numerous occasions when their mother was at work. Each provided graphic detail about the incidents. The boys stated that some of the activity took place in the presence of both brothers.

During their interviews, Brandl showed each boy a series of anatomically correct drawings depicting figures of an adult male and a young boy. With the aid of these drawings, each child described the [petitioner's] conduct. They also stated that the [petitioner] had threatened to hurt them and their mother if they told anyone about these regular occurrences." *State* v. *Alterisi,* supra, 47 Conn. App. 200–202.

I

## APPELLATE COUNSEL

We first consider the petitioner's claim that his appellate counsel in the underlying criminal conviction, Robert M. Casale, was ineffective, and that the habeas court in the present case improperly concluded that the petitioner had not established that ineffectiveness. More specifically, he argues that Casale was ineffective in not having raised a claim on appeal that the state committed prosecutorial impropriety in its final argument in the trial. We disagree.

It is axiomatic that, in order to establish a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish both deficient performance and the resulting prejudice. See *Mozell* v. *Commissioner of Correction,* 87 Conn. App. 560, 562, 867 A.2d 51, cert. denied, 273 Conn. 934, 875 A.2d 543 (2005). The performance prong requires proof that appellate counsel's performance fell below an objective standard of reasonableness. Id., 563. There is a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. Just as the decision of trial counsel not to object to certain evidence is a matter of trial tactics, not evidence of incompetency; *Levine* v. *Manson,* 195 Conn. 636, 648, 490 A.2d 82 (1985); the tactical decision of appellate counsel not to raise a

particular claim is ordinarily a matter of appellate tactics, and not evidence of incompetency, in light of the presumption of reasonable professional judgment. *Orellana* v. *Commissioner of Correction*, 135 Conn. App. 90, 99, 41 A.3d 1088, cert. denied, 305 Conn. 913, 45 A.3d 97 (2012). This is particularly apt because our courts have frequently chided appellate counsel for not exercising more discriminating judgment in selecting which claims to present on appeal, so as not to dilute the strength of strong arguments by forcing the court to consider weak ones. See, e.g., id., 98; *Johnson* v. *Commissioner of Correction*, 131 Conn. App. 805, 809, 29 A.3d 166 (2011); *DaEria* v. *Commissioner of Correction*, 107 Conn. App. 539, 542, 946 A.2d 249, cert. denied, 289 Conn. 911, 957 A.2d 877 (2008).

The prejudice prong requires proof that, had the prior performance been reasonable rather than inadequate, there is a reasonable probability that the petitioner would have prevailed on the appeal. *Johnson* v. *Commissioner of Correction*, supra, 131 Conn. App. 808. A failure to establish either prong will be fatal to a claim of ineffectiveness of counsel. *Crawley* v. *Commissioner of Correction*, 141 Conn. App. 660, 665, 62 A.3d 1138, cert. denied, 308 Conn. 946, 68 A.3d 656 (2013). Our scope of review regarding the underlying facts found by the habeas court is the clearly erroneous standard, and the plenary standard of review applies regarding the legal conclusion of whether those facts amount to ineffectiveness of counsel. *Orellana* v. *Commissioner of Correction*, supra, 135 Conn. App. 99.

The following are the facts underlying this claim. Because the petitioner believed he was not guilty and wanted to prove his innocence, during plea negotiations he agreed to take a polygraph at the state police headquarters in Meriden on December 14, 1994. There, he filled out a questionnaire and, prior to taking the polygraph, participated in an interview that was based on

his answers to the questionnaire. One of the questions was: "How do you feel the police have treated you during this investigation?" His written answer was: "I don't feel a proper investigation was performed." When asked to elaborate on this answer, he questioned why the police had not talked to nineteen other women with children with whom he had lived who could tell the police "whether it had ever happened with them."[2] During the criminal trial, the petitioner testified, and he was asked on cross-examination whether he had lived with nineteen other women with children; he answered in the affirmative.

During closing argument, Donovan, his trial counsel, argued that the state's case lacked the evidence to support its allegations. He argued: "If you can't prove that he molested those kids, then try to show that he is a bad person," and bolstered this argument by arguing that the petitioner's then girlfriend "knows she is not living with a child molester."

In rebuttal, the state argued: "[The petitioner] admitted he is thirty-six years old and he has said he has lived with . . . nineteen different women. And every single one of those nineteen different women all had children; that should tell you something. The odds of that are phenomenal. You don't just live with nineteen separate women, and you are only thirty-six years old and they've all had children. It seems like he is seeking women with children. And you wonder why he is seeking women with children—because he is a pedophile. And how do we know that? Because the state has proved that he is a pedophile here in court. You heard [the victims] testify."[3] Donovan did not object, move for a mistrial, or request a curative instruction.

---

[2] The petitioner did not take the polygraph because of psychiatric problems disclosed during the interview.

[3] Although in his brief in this court the petitioner raises a number of other passages from the state's final argument in support of his claim of prosecutorial impropriety, the passage quoted was the only one specifically

We first note that, in contrast to his argument in this court, in the habeas court in the present case, the petitioner specifically disclaimed any challenge to the use of the word "pedophile," and the habeas court in its memorandum of decision noted that concession and, accordingly, did not address it. Instead, his argument in the habeas court focused on the reference to his having lived with nineteen other women with children, implying, in his view, that there were other victims of his sexual molestation and, therefore, referring to facts not in evidence.

In this habeas matter, Casale testified that after thoroughly reviewing the transcripts and conversing with Donovan, he determined, as a tactical matter, to raise only the issue of whether the trial court had improperly permitted the children to testify by videotape pursuant to General Statutes § 54-86g and *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), because he determined that it was the strongest issue in the case. He testified further that he did not raise any issue of prosecutorial impropriety because it had not been preserved, it would not have merited appellate reversal under the then prevailing standard of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[4] regarding

presented to the habeas court in the present case, and, accordingly, the only one considered by the habeas court in its memorandum of decision. We therefore decline to address those other passages on appeal. See *State* v. *Busque*, 31 Conn. App. 120, 127, 623 A.2d 532 (1993) (this court will not review claims presented for first time on appeal), appeal dismissed, 229 Conn. 839, 643 A.2d 1281 (1994).

[4] We do not suggest by this analysis that the argument of the prosecutor was proper or improper. We need not engage in that analysis because, even if the argument was improper, taken in isolation, it was a reasonable tactical appellate decision not to raise such a claim, given the then existing standard of review in order to prevail on such a claim. Since then, however, our Supreme Court has changed the standard for appellate review for claims of prosecutorial impropriety at the trial level. See *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004) (requiring use of factors discussed in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 [1987]). Even if we

such a claim; see *State* v. *Smith*, 209 Conn. 423, 428, 551 A.2d 742 (1988) (review granted only where record disclosed "a pattern of repeated, strident and serious misconduct"); *State* v. *Lepri*, 56 Conn. App. 403, 416, 743 A.2d 626 ("where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial, we have consistently held that the second prong of *Golding* has not been met" [internal quotation marks omitted]), cert. denied, 253 Conn. 902, 753 A.2d 938 (2000); in that it was brief, isolated, not necessarily improper and, even if improper, not blatantly egregious. The habeas court credited Casale's testimony, and determined that his tactical choice was reasonable. We agree with the determination of the habeas court that this was a reasonable tactical decision on the part of appellate counsel and, therefore, the petitioner cannot prevail on his claim of ineffectiveness of appellate counsel.

We conclude, along with the habeas court, that it was a reasonable tactic not to raise this unpreserved claim because it was brief, isolated and not egregious. It is highly unlikely that it would have prevailed on appeal, and would have, if raised, only served to dilute the strength of the appellate claim that was raised.

## II

## FIRST HABEAS COUNSEL

The petitioner also claims that the habeas court in the present case improperly rejected his claim that his first habeas counsel, William Palmieri, rendered ineffective assistance in presenting that petition. We disagree.

In order to prevail on a claim of ineffective assistance of habeas counsel, a petitioner must establish that (1)

were to apply the *Williams* factors, moreover, Casale's tactical decision not to raise the claim was reasonable.

counsel was ineffective; and (2) the petitioner was prejudiced, by showing that there is a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial. *Lapointe* v. *Commissioner of Correction*, 138 Conn. App. 454, 474–75, 53 A.3d 257, cert. granted on other grounds, 307 Conn. 940, 56 A.3d 948 (2012). This necessarily means that the petitioner must establish that both prior habeas counsel and trial counsel were ineffective. *Lozada* v. *Commissioner of Correction*, 223 Conn. 834, 842–43, 613 A.2d 818 (1992). We have characterized this burden as presenting a " 'herculean task' . . . ." *Lapointe* v. *Commissioner of Correction*, supra, 475. With particular reference to strategic decisions of trial counsel, we are required to eliminate the distortion of hindsight; to reconstruct the circumstances regarding trial counsel's conduct and evaluate that conduct from counsel's perspective at the time; and to afford it the presumption that, under the circumstances, it might be considered sound trial strategy. *Strickland* v. *Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Additionally, the right to counsel is not the right to perfect counsel. *Ancona* v. *Commissioner of Correction*, 100 Conn. App. 283, 289, 918 A.2d 283, cert. denied, 282 Conn. 918, 925 A.2d 1099 (2007). With this legal background in mind, the petitioner presents several instances in which he claims that Palmieri was ineffective because he failed to claim that Donovan had been ineffective. We consider each instance in turn.

The first instance involves Donovan's failure to file a motion in limine regarding the petitioner's mental health treatments and to object to certain questions regarding that treatment. The facts are as follows. Prior to the polygraph, during an interview conducted by a state police detective, in which the petitioner had been given *Miranda*[5] warnings and which was recorded on

---

[5] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

a DVD, the petitioner told the detective that he was collecting social security disability benefits and veterans' benefits. He explained that his disability arose from a fall he sustained while he was in the Navy. He injured his knee. Responding to a question about medications, he stated that he had taken Lithium and Thorazine daily for a personality disorder, and that he had been treated for mental health issues from 1986 until two years before the interview. In response to a question about whether he had ever had a major illness, he responded, "if you want to consider personality disorder," and stated that such a disorder must be a major illness because he was receiving disability payments for it. In response to a question about whether he had ever been treated for emotional or psychiatric illnesses, he answered in writing: "personality disorder: manic-depressive, 1986 to two years ago." During the criminal trial, the petitioner testified on direct examination that he was receiving veterans' disability benefits for injuries to his back and knee resulting from a fall he sustained while he was in the Navy. Donovan then asked him: "Are you currently receiving a disability payment in connection with your injuries?" He responded: "Yes, I receive social security disability and VA comp.," thus linking both sets of disability payments to his knee and back injuries.

On cross-examination, the state began to ask him if he had told a state police detective that his disability was a personality disorder. Donovan objected, and the jury was excused. A colloquy ensued in which the state claimed that it was offering the petitioner's prior statement to the detective as a prior inconsistent statement because it contradicted his statement that his disability payments were based on his injuries he sustained while in the Navy, and Donovan claimed that the prior statement was irrelevant and unduly prejudicial. Ultimately, the court requested that the state ask the petitioner the

question, in the jury's absence, that it sought to ask in the jury's presence.

The state did so and asked: "Mr. Alterisi, you said you are collecting a social security and VA compensation disability, correct?" The petitioner answered affirmatively and the state followed up, asking: "What are you collecting the social security disability for?" The petitioner responded that "[t]he social security disability is for a personality disorder, bipolar manic depressive."

There then ensued a confusing set of rulings by the court:

"The Court: Objection sustained. Bring the jury back. That statement is consistent with his testimony.

"[The Prosecutor]: I would be able to ask that question, though?

"The Court: Oh, certainly.

"[The Prosecutor]: Objection as to the inconsistent part.

"The Court: Yes."

When the jury returned to the courtroom, the state asked the question referred to previously, the petitioner responded, and the state asked a couple of follow-up questions regarding his treatment for his personality disorder. Donovan did not object to those questions.

During the trial on the present habeas petition, Donovan testified that, although he had asked the petitioner on direct examination only about his veterans' compensation for his knee and back injuries, the petitioner had spontaneously added that he was also receiving social security disability payments. That, in Donovan's view, opened the door to the state's cross-examination regarding the source of the social security disability payments, and resulted in Donovan's objection to that

subject as irrelevant and unduly prejudicial. He further testified that he thought he had secured a favorable ruling on the question, but that he did not renew his objection in front of the jury because, despite the ruling sustaining his objection, the state had specifically asked the court if it could ask the question and the court had specifically permitted the state to do so.

Palmieri, counsel for the petitioner in the first habeas trial, testified during the second habeas trial that, in reviewing the file he learned that Donovan had accompanied the petitioner to the state police complex in Meriden for the polygraph, and that while waiting for the interview to begin, Donovan told the petitioner that he had to go to the Meriden courthouse to attend to some matter, and the petitioner agreed that he could leave while the petitioner took the polygraph. Palmieri further testified that he took the view that the interview had turned out to be more like an interrogation and, therefore, his strategy in the first habeas trial was to claim that Donovan had been ineffective by leaving the petitioner unattended during the interview.

Palmieri also testified that for several reasons he did not claim that Donovan was ineffective by failing to object, once the jury had returned to the courtroom, to the state's question regarding the source of the petitioner's social security disability benefits. Donovan had done all he could to preclude the inquiry about the petitioner's personality disorder and, in fact, secured what appeared to be a favorable ruling. When the state nonetheless asked the question in the jury's presence, Donovan had made a reasonable tactical decision not to object again because the court already had specifically granted the state permission to ask the question, and to object again would have highlighted something that was fleeting, isolated and not harmful, and might have resulted in a rebuke by the court for objecting to a question that it had already specifically permitted.

Similarly, Palmieri said he did not view Donovan's failure to file a motion in limine as ineffective assistance because Donovan already knew the contents of the DVD, and that to do so might have caused the state to delve further into a worrisome issue than it might otherwise have done. Instead, he testified, it was smart strategy on Donovan's part to wait and see whether the state would inquire about the petitioner's mental health and, if it did, make an appropriate objection.

In sum, Palmieri testified that he, himself, made a tactical decision not to pursue claims that Donovan should have objected again to the state's question and should have filed a motion in limine as to the DVD. Palmieri's tactical decision was based on his view that raising weak claims risks obscuring a party's strong claims.

At the second habeas trial, the petitioner presented the expert testimony of Attorney Auden Grogins. The habeas court summarized her testimony as follows. Reasonably competent counsel would have argued further outside the presence of the jury, Donovan let the favorable ruling slip away by not objecting to it again, and reasonably competent counsel would have done so because evidence of a mental health issue is highly prejudicial in a sexual assault case. In addition, Grogins testified that, because any time a criminal defendant testifies, he opens himself up to having statements he made to the police used against him on cross-examination, reasonably competent counsel would have filed a motion in limine to preclude any inquiry into the petitioner's mental health. She further testified that Donovan should have sought a clarification of the court's confusing ruling. The habeas court, however, did not credit Grogins' expert opinions that Donovan had been ineffective and that, by implication, Palmieri had been ineffective by not raising this issue in the first habeas trial.

The habeas court in the present case rejected the petitioner's claim that Palmieri had been ineffective in failing to claim that Donovan had been ineffective in failing to keep the jury from learning of the petitioner's personality disorder. The court specifically credited Palmieri's testimony that he made a tactical decision not to do so. The court further concluded, on the basis of the reasons given by Palmieri, that the "petitioner cannot overcome [the strong presumption of reasonableness] by second-guessing an approach that proved to be unsuccessful."

We agree with the habeas court. It was a presumptively reasonable tactical decision by Palmieri not to raise what may well have been an unsuccessful claim that Donovan had been ineffective in failing to object to, and in failing to file a motion in limine regarding, the evidence of the petitioner's personality disorder, and to focus the first habeas court's eye on what he regarded as a strong claim, namely, Donovan's having left the petitioner unattended at the interview prior to the polygraph. Just as trial and appellate lawyers must make tactical decisions on which claims to raise—so as to focus the fact finders' minds on their strong claims and not dilute that focus by raising weak claims— habeas counsel must do the same. Like the habeas court, we cannot conclude that the petitioner has overcome the strong presumption of reasonableness that attaches to counsel's tactical decisions.

Next, the petitioner claims that the habeas court improperly rejected his claim that Palmieri had been ineffective by not claiming that Donovan had been ineffective for failing to keep from the jury the fact that the petitioner had been in a drug treatment program. We are not persuaded.

The facts regarding this claim are as follows. During the interview prior to the polygraph, the detective asked

the petitioner if he had ever participated in an alcohol or drug abuse program. The petitioner said that, about four years prior, he had admitted himself to a thirty day drug clinic at a Veterans Administration hospital.

In the course of the petitioner's direct examination during the criminal trial, he testified that A, the mother of the victims, had a drinking problem, and had been violent toward him and the victims. On cross-examination, the state asked: "Didn't you also have your own substance abuse problem during the time you were with her?" When the petitioner denied this, the state asked: "In 1990, about December of 1990, didn't you check into the West Haven [Veterans Administration hospital] for thirty days for a drug treatment program?" The petitioner responded: "Yes."

At the habeas trial in the present case, Donovan testified that, although he did not recall why he had not objected, it may well have been a tactical decision to let the answer pass without drawing attention to it. Palmieri testified that he regarded Donovan's failure to object as a sound tactical decision, not evidence of ineffectiveness and, similarly, Donovan's not having filed a motion in limine as a discretionary and tactical decision not to alert the state to what the defense regarded as worrisome information. Palmieri also testified that, because the petitioner had waived his *Miranda* rights before the interview with the detective, that was a significant factor in deciding which claims to pursue against Donovan regarding those parts of the interview that came out at the criminal trial.

Grogins opined that reasonably competent counsel would have objected, on the ground of irrelevance to any questions about the petitioner's drug treatment. She also acknowledged, however, that she does not object every time opposing counsel asks an objectionable question, and that in presenting habeas cases, she does

not pursue every potential claim regarding tactical decisions of trial counsel because of the difficulty of overcoming the presumption of reasonableness in matters of strategy.

The habeas court in the present case found Palmieri's testimony to be credible. It also stated: "Based upon the information available to . . . Palmieri at the time, the court cannot say that he was ineffective for not raising this issue. This is particularly true given that our appellate courts have repeatedly held that the decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency." (Internal quotation marks omitted.)

Again, we agree with the habeas court. As for the motion in limine, it is very unlikely that the criminal trial court would have granted it, given that the petitioner had waived his *Miranda* rights and, because he took the witness stand at trial, the court would have undoubtedly wanted to consider any questions asked on cross-examination in light of his direct examination. As for the failure to object to the question about the petitioner's drug treatment on cross-examination at the criminal trial, we simply agree with the reasoning of the habeas court that Palmieri cannot be faulted for failing to raise the issue because such a decision by criminal trial counsel ordinarily falls within the realm of trial tactics and is not ordinarily evidence of ineffectiveness. Further, it was a reasonable tactic by Palmieri, as habeas counsel, to decline to raise that issue so as not to dilute the strength of what he regarded as his strong claim.

Next, the petitioner claims that Palmieri was ineffective for not claiming that Donovan had been ineffective for failing to object to certain questions asked of the petitioner regarding his having lived with nineteen

women, all of whom had children. Specifically, the petitioner argues that the questions constituted prosecutorial impropriety as having been based on facts not in evidence, containing excessive sarcasm, suggesting that the petitioner was immoral, and as having been inflammatory and unduly prejudicial. We disagree.

At the criminal trial, after the petitioner's direct examination, the state asked the following questions on cross-examination:

"Q. Now, weren't you attracted to [A] because she had children?

"A. No.

"Q. Haven't you lived with nineteen women, all of who[m] have had children?

"A. Somewhere around there. I don't know the exact number.

"Q. So, somewhere around nineteen women you have lived with and they all had children?

"A. It's hard to find a single girl without kids today.

"Q. And I suppose that none of those children were yours?

"A. No, they weren't."

Donovan did not object to any of these questions. At the habeas trial in the present case, Donovan testified that the petitioner had volunteered the information about having lived with nineteen other women with children in order to demonstrate his dissatisfaction with the police investigation, namely, that, if the police had interviewed them, the police investigation would have shown that he had not molested any of those children. Donovan further testified that part of his theory of defense at the criminal trial was the inadequacy of the police investigation. Thus, the petitioner's testimony in

this regard was consistent with that theory of defense, and Donovan testified that it could have been construed as a comment upon the investigation.

Palmieri testified that, during the first habeas trial, he had raised and extensively argued the issue of the petitioner's statements about having lived with nineteen other women with children in the context of his claim that Donovan had been ineffective in leaving the petitioner unattended during the interview with the detective, which had led to the petitioner's having made the statements about the other women with whom he had lived. The first habeas court, however, was unpersuaded by this claim, and that judgment is not before us.

The habeas court in the present case stated: "Attorney Grogins testified that, in her opinion, any reasonably competent habeas counsel would have raised the issue because any reasonably competent trial counsel would have objected to this evidence being admitted, and would have filed a motion in limine to prevent inquiry into the area. She also testified that the evidence was highly prejudicial because it left the jury with the impression that the petitioner sought out women with young children whom he could molest. . . . The undisputed fact remains that Attorney Palmieri did make arguments regarding the state's cross-examination regarding the nineteen women. Thus, there is evidence that Attorney Palmieri made a tactical decision as to how to approach this issue. Based on that evidence, the court cannot say that Attorney Palmieri's tactical decision was unreasonable. The petitioner himself made the comment about the nineteen women in the interview because he thought if the police talked to those women, the police would conclude that he was not a child molester. . . . [T]he court cannot conclude that it was unreasonable for Attorney Palmieri not to argue that the failure to object to a question constituted

ineffective assistance of counsel. As noted above, decisions not to object made in the heat of trial are presumed to be tactical, and are almost unassailable. The same is true as to the decision not to file a motion in limine. As Attorney Palmieri noted, filing such a motion can sometimes serve to bring to your opponent's attention an issue he might not have otherwise pursued. Based on the evidence presented to this court, the petitioner has not met his burden to prove that Attorney Donovan's failure to object or file a motion in limine constituted ineffective assistance of counsel. Consequently, Attorney Palmieri's failure to raise that as an issue in the first habeas proceeding cannot constitute ineffective assistance of counsel." (Citations omitted; footnote omitted.)

We agree that the petitioner did not establish that Palmieri rendered ineffective assistance of habeas counsel. Palmieri's tactical decision not to attack Donovan's decision not to object to the evidence and not to file a motion in limine falls well within the presumption of reasonableness, given how the evidence of the petitioner's relationships with the nineteen women came out, and given the unlikelihood of the success of such a motion.

The petitioner's final claim mirrors his first claim. He claims that Palmieri was ineffective in not attacking Donovan's failure to object to that portion of the state's rebuttal closing argument that the petitioner had lived with nineteen women, all of whom had children. This claim requires very little discussion.

The habeas court in the present case specifically credited Palmieri's testimony that his was a tactical decision based on his assessment that Donovan's tactical choice was reasonable, for a number of reasons. Donovan's choice was reasonable because to have objected would

have drawn more attention to the matter than it warranted; it was isolated; it was consistent with Donovan's argument that the state was merely attempting to besmirch the petitioner in the absence of hard proof of the crimes charged; and it would have been unlikely that Donovan would prevail on that claim. The court specifically discredited Grogins' opinions to the contrary. For much the same reasons that we gave in rejecting the petitioner's claim that Casale performed ineffectively as appellate counsel, we also reject the petitioner's claim that Palmieri performed ineffectively as first habeas counsel in this regard.

The judgment is affirmed.

In this opinion the other judges concurred.