******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ABDUL MUKHTAAR *v.* COMMISSIONER
OF CORRECTION
(AC 34193)

Beach, Sheldon and Dupont, Js.

*Argued January 22—officially released July 7, 2015*

(Appeal from Superior Court, judicial district of
Tolland, T. Santos, J.)

*Abdul Mukhtaar*, self-represented, with whom, on the brief, were *Michael D. Day* and *Robert J. McKay*, assigned counsel, for the appellant (petitioner).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Robin S. Schwartz*, assistant state's attorney, and *Gerard P. Eisenman*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DUPONT, J. In this "habeas on a habeas" case, the petitioner, Abdul Mukhtaar, appeals from the judgment of the habeas court denying his third petition, as amended, for a writ of habeas corpus. This third petition is one in a labyrinth of petitions for a writ of habeas corpus and amended habeas corpus petitions filed by the petitioner. On appeal, the petitioner claims that the habeas court erred when it concluded that his first habeas counsel, Damon A. R. Kirschbaum, did not render ineffective assistance by failing to investigate (1) the state's case and witnesses; (2) a third-party culpability claim; and (3) the petitioner's alibi defense.[1] We disagree with the petitioner and, accordingly, affirm the judgment of the habeas court.

The habeas court set forth the following factual history in its memorandum of decision. "At approximately 4 p.m. on February 14, 1996, Benjamin Sierra, Jr., was driving his parents' car on Fairfield Avenue in Bridgeport. While stopped at a red light at the intersection of Fairfield and Iranistan Avenues, Sierra spotted two young women, Tracey Gabree and Terri Horeglad, with whom he was acquainted, standing at a nearby pay telephone. Sierra waved to Gabree and Horeglad and they approached and entered Sierra's car. Horeglad sat in the front passenger seat and Gabree sat in the back seat. Gabree asked Sierra for a cigarette. Sierra then turned around and gave her a cigarette and a light. . . . When Sierra turned back toward the front of the car, he observed that his vehicle was blocked by a tan car that was facing the wrong direction on Fairfield Avenue. At that moment, Gabree shouted: 'Oh shit, Kareem!'[2] Gabree then fled from Sierra's car. A man, later identified by Sierra and Gabree as the [petitioner], emerged from the tan car and approached the passenger side of Sierra's car, where Horeglad remained seated. Sierra jumped out of his car and asked the [petitioner] what was wrong. The [petitioner], who did not respond, pulled out what appeared to be a .32 or .38 caliber chrome plated revolver and fired four shots at Horeglad, each of which entered the right side of her body. Horeglad died as a result of the gunshot wounds." (Footnote added.)

The petitioner was charged and, following a jury trial, convicted of murder in violation of General Statutes § 53a-54a. On September 19, 1997, the trial court sentenced the petitioner to fifty years imprisonment. The petitioner appealed from the judgment of conviction directly to our Supreme Court and the conviction was affirmed. *State* v. *Mukhtaar*, 253 Conn. 280, 750 A.2d 1059 (2000).

The petitioner filed his first petition for a writ of habeas corpus on January 31, 2001, and subsequently withdrew it on February 28, 2001. He filed his second

petition for a writ of habeas corpus on April 2, 2001, and subsequently filed an amended petition on December 21, 2006 (second petition). In count one of the second petition, the petitioner alleged ineffective assistance of his trial counsel, Gerald Bodell. Specifically, he alleged that Bodell rendered deficient performance in (1) advising him not to testify at trial and (2) not seeking additional investigation into the possibility of juror bias. In count two, the petitioner alleged juror bias. At the habeas trial on this second petition, the petitioner was represented by his first habeas counsel, Kirschbaum. Following this first habeas trial, the court denied the second petition, and, thereafter, the petitioner's appeal following that denial was dismissed. *Mukhtaar* v. *Commissioner of Correction*, 113 Conn. App. 114, 964 A.2d 1251, cert. denied, 291 Conn. 913, 969 A.2d 175 (2009).

The petitioner filed his third petition for a writ of habeas corpus on January 14, 2008. This petition was subsequently amended on September 8, 2010, (third petition) and is the subject of this appeal. This third petition alleged, inter alia, that the petitioner's first habeas counsel, Kirschbaum, provided ineffective assistance during the petitioner's first habeas trial. The petitioner alleged that Kirschbaum had failed to adequately (1) prosecute a claim that there had been juror intimidation during the criminal trial; (2) investigate the petitioner's alibi that he was in New York when the crime was committed; (3) present available witnesses and evidence to support the petitioner's contention that trial defense counsel was ineffective; (4) present the issue that the trial judge should have recused himself because he had previously presided over the probable cause hearing; (5) present a claim that the jury was not impartial and that the jury instructions were faulty; (6) investigate and present a claim that trial defense counsel failed to properly investigate and present evidence to impeach a witness' identification of the petitioner; and (7) investigate the factual bases for the petitioner's habeas claims, present evidence in support of third-party culpability, and present available witnesses and establish the petitioner's defense to the criminal charge.

The matter was tried before the habeas court, *T. Santos, J.*, over the course of three days. The habeas court heard testimony from Michael Johnston, William Birch, Bridgeport police Detective Donald A. Jacques, the petitioner, Suzanne Zitser-Curtis,[3] and Kirschbaum. On December 5, 2011, the habeas court issued a memorandum of decision denying the third petition, and, on December 22, 2011, granted the petition for certification to appeal. This appeal followed.

On appeal, the petitioner claims that the habeas court erred when it concluded that Kirschbaum did not render ineffective assistance of counsel. Specifically, the petitioner argues that Kirschbaum was ineffective because

he failed to investigate the state's case and witnesses, the petitioner's third-party culpability claim, and the petitioner's alibi defense.[4]

We begin by setting forth our well settled standard of review governing ineffective assistance of counsel claims. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *McClean* v. *Commissioner of Correction*, 103 Conn. App. 254, 262, 930 A.2d 693 (2007), cert. denied, 285 Conn. 913, 943 A.2d 473 (2008).

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." (Internal quotation marks omitted.) *Santaniello* v. *Commissioner of Correction*, 152 Conn. App. 583, 587, 99 A.3d 1195, cert. denied, 314 Conn. 937, 102 A.3d 1115 (2014). "In *Strickland* . . . the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . .

"To satisfy the performance prong [of the *Strickland* test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." (Citations omitted; internal quotation marks omitted.) *Holloway* v. *Commissioner of Correction*, 145 Conn. App. 353, 364–65, 77 A.3d 777 (2013). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 466 U.S. 694.

"[When] applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . [T]he petitioner will have to prove that one or both of the prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Emphasis omitted; footnote omitted.) *Harris* v. *Commissioner of Correction*, 108 Conn. App. 201, 209–10, 947 A.2d 435, cert. denied, 288 Conn. 911, 953 A.2d 652 (2008). "Therefore, as explained by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of [trial] counsel must essentially satisfy *Strickland* twice: he must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his [trial] counsel was ineffective." (Internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, 152 Conn. App. 212, 230, 98 A.3d 81, cert. denied, 314 Conn. 932, 102 A.3d 83 (2014). "We have characterized this burden as presenting a herculean task . . . ." (Internal quotation marks omitted.) *Alterisi* v. *Commissioner of Correction*, 145 Conn. App. 218, 227, 77 A.3d 748, cert. denied, 310 Conn. 933, 78 A.3d 859 (2013). We will now address each of the petitioner's claims of ineffective assistance individually, cognizant that in order to set forth a prima facie case of ineffective assistance of the petitioner's first habeas counsel on the ground of ineffective assistance of trial counsel, the petitioner must set forth a prima facie case of ineffective assistance of trial counsel. See *Ham* v. *Commissioner of Correction*, supra, 230.

On appeal, the petitioner asserts, inter alia, that the court improperly concluded that Kirschbaum did not render ineffective assistance. Under this rubric, the petitioner raises three claims. We will address each of these claims in turn.

## I

## FAILURE TO INVESTIGATE

The petitioner first claims that the habeas court erred when it concluded that Kirschbaum did not render ineffective assistance by failing to investigate the state's

case and witnesses. Because the petitioner makes several arguments in this regard, we will address each in turn.

A

The petitioner's first argument is that Kirschbaum was ineffective as habeas counsel because he failed to pursue or raise the deficiencies in the multiple statements that Sierra gave to the police after the shooting. Additionally, the petitioner argues that Kirschbaum rendered ineffective assistance at the first habeas trial by failing to claim that trial counsel's performance was deficient because trial counsel did not file a motion to suppress a photographic array that the police showed to Sierra.

We first note the following additional relevant facts, which our Supreme Court outlined in its decision on the petitioner's direct appeal. During the petitioner's criminal trial, Sierra testified about the shooting. *State* v. *Mukhtaar*, supra, 253 Conn. 299. He stated that he had been interviewed by officers of the Bridgeport Police Department after the incident. Id. The police officers had shown him a photographic array and asked him whether the photograph of the shooter appeared in the array. Id. Sierra testified that he had selected the petitioner's photograph from the array, but insisted that he had told the police that he was not certain about the identification and that all he could say was that the shooter looked similar to the person depicted in the selected photograph. Id. Sierra also testified that he had given the police a written, signed statement about the shooting the day after the incident. Id.

According to the petitioner, however, Sierra gave a written statement on the actual day of the shooting in which he indicated that he did not get a good look at the shooter's face because he was "more interested in the gun that was in his hand." On the basis of this assertion, the petitioner argues that Bodell, and thereafter Kirschbaum, should have investigated the discrepancies among Sierra's statements. He argues that if Sierra had been properly investigated, the attorneys would have found that Sierra's statement and photographic identification were unreliable, and that a motion to suppress the photographic array was warranted during the criminal trial. The respondent, the Commissioner of Correction, argues, however, that the petitioner did not expressly raise this issue in his third habeas petition and did not introduce any evidence at the habeas hearing to support his claim. We agree with the respondent.

At the habeas trial, the petitioner raised the issue of Sierra's statements in the context of his judicial impartiality claim. Specifically, the petitioner alleged that Kirschbaum was ineffective for failing to argue that the trial judge should have recused himself because

he previously had presided over the probable cause hearing during which Sierra testified regarding his statements to police and his identification of the petitioner in a photographic array. As to Sierra's statements themselves, the petitioner argued broadly that Kirschbaum failed to present available witnesses. In response to this broad allegation, the habeas court found that "no credible evidence was presented to substantiate the claimed ineffective assistance of prior habeas counsel." The habeas court held that the petitioner "neither affirmatively proved deficient performance nor, assuming such deficient performance, demonstrated to this court that its confidence in the outcome of the criminal jury trial should be undermined."

In the present appeal, the petitioner must show not only that counsel's performance was deficient, but also that the deficient performance prejudiced the defense. Even if we assume, arguendo, that Kirschbaum's failure to investigate Sierra satisfies the performance prong of *Strickland*, the petitioner failed to present any evidence showing that Sierra would have provided information that would have been beneficial to the petitioner's criminal trial or that, had a motion to suppress been filed, the photographic array would have been suppressed. The petitioner merely identifies discrepancies between Sierra's statement on the day of the shooting and his statement and photographic identification on the day after the shooting. Furthermore, Sierra was not called to testify at the petitioner's habeas trial. We conclude, therefore, that the court properly concluded that the petitioner failed to show both that Kirschbaum's performance was ineffective and that this ineffectiveness prejudiced the petitioner's first habeas proceeding.

### B

Next, the petitioner argues that in light of the circumstances surrounding Johnston's testimony and statement and Birch's testimony and statement, the habeas court should have made a finding that Bodell, as trial counsel, was ineffective in his representation of the petitioner and, in turn, should have found that Kirschbaum was ineffective for not pursuing or raising the deficiencies in these witnesses' testimony at the first habeas trial.

The following additional facts, as described by the habeas court in its memorandum of decision, are relevant to our resolution of this claim. "The petitioner presented testimony from Michael Johnston and William Birch, who both witnessed the shooting in February, 1996, nearly fifteen years prior to testifying in the instant habeas corpus proceeding. According to the petitioner, a central issue regarding Mr. Johnston's identification of the shooter is the discrepancy between the statement given to the police, which does not mention the shooter's hairstyle, and a subsequent statement given in 2003, which indicates the shooter had his hair

styled in cornrows or dreadlocks. Mr. Johnston testified before [the habeas] court that he only had a quick look at the shooter's hairstyle, but could not describe it well. When asked if he could describe the shooter's hairstyle, Mr. Johnston indicated: 'Not really, because I believe I thought he had kind of longish hair, but he was also wearing a hood and very baggy khaki clothing.' Mr. Johnston was then asked whether he recalled 'saying at some point that that person had cornrows or dreadlocks,' to which he answered: 'I don't think it was dreadlocks more than he had short hair that looked like it was—I don't know how to explain it. It was short, and it seemed to be some type of style . . . like tied in knots or parted like.' . . .

"As to William Birch, the petitioner's focus is on his estimation of the shooter's height as being approximately five feet, nine inches, which is slightly more than other estimates provided by witnesses. For example, Mr. Johnston's statement to the police indicates that the shooter was five feet, six inches, or five feet, seven inches. Mr. Birch also testified that the police did not seem particularly interested in obtaining a statement from him because numerous people had come forward to provide information, but on February 14, 1996, the day of the shooting, Mr. Birch provided a statement to Detective Jacques accompanied by a diagram of the crime scene." (Citation omitted; footnotes omitted.)

In its memorandum of decision, the habeas court found that the discrepancies that the petitioner was focusing on would only have been inconsistencies that the jury would have assessed and assigned weight to along with other identifications and evidence. The court concluded: "Had the testimonies of both Mr. Johnston and Mr. Birch been impeached to a greater extent, or even entirely excluded, the fact remains that other witnesses such as Sierra and Gabree identified the petitioner as the shooter." In other words, the court held that the testimony of Johnston and Birch was cumulative. On the basis of the foregoing, the court concluded that the evidence presented at the habeas trial failed to undermine the court's confidence in the outcome of the criminal trial.

After a careful review of the record, we conclude that the habeas court properly determined that the petitioner failed to introduce any credible evidence that, but for Kirschbaum's failure to highlight discrepancies in the testimony of Johnston and Birch, the outcome of his first habeas trial would have been different and, thus, that the petitioner failed to satisfy the prejudice prong of *Strickland*.[5]

C

The petitioner makes two final claims with respect to Kirschbaum's failure to investigate the state's case.

First, the petitioner argues that Kirschbaum should have challenged Bodell's failure to file a motion in limine to preclude from evidence the ammunition box found in the petitioner's car and failure to retain a fingerprint expert to examine the fingerprint found on this box. In his principal brief to this court, the petitioner asserted the following with respect to the state's evidence at his criminal trial: "After the shooting incident, Detective Richard Herlihy testified that he examined and photographed the cream colored car found on Laurel Street. Detective Herlihy discovered a box containing forty-four Blazer .38 caliber special bullets in the glove box. The box normally holds fifty bullets. A fingerprint was found on the box that matched the petitioner, but there was no way of knowing when the fingerprint was put on the box. Edward Jachimowicz, a firearms expert at the state forensics laboratory, testified that when he compared the four bullets taken from the body of Terry Horeglad to the bullets found in the box of forty-four, he found that both sets of bullets were the same caliber, but the bullets from the victim were different from the bullets found in the box. Attorney Bodell did not file a motion in limine to preclude that box found in the cream colored car, nor did he retain an expert to examine the fingerprint on the found box of bullets."

In addition, the petitioner argues that Kirschbaum failed to investigate the gunshot residue test that was performed on Roderick McCoy, another suspect in the shooting. In his principal brief to this court, the petitioner asserts the following with respect to the evidence at his criminal trial: "To demonstrate to the jury that a gunshot residue test was conducted on Roderick McCoy, the state presented two witnesses on rebuttal— Detective Richard Donaldson, Bridgeport [Police Department], and Dr. Virginia Maxwell, state forensics laboratory. Detective Donaldson took a sample from McCoy, and Dr. Maxwell tested the sample and found no gunshot residue. Dr. Maxwell testified that she would [not] have found any residue of a gunshot if the person was wearing gloves and that the weather conditions may influence [where] the residue would be deposited other than the hand."

At oral argument before this court, the petitioner admitted that no evidence was presented at the habeas trial indicating that the fingerprint on the ammunition box did not belong to him or that anything was "wrong" with the ammunition box. Furthermore, claims with regard to the ammunition box and the gunshot residue test were neither raised in the petitioner's third petition nor addressed in the habeas court's memorandum of decision. Consequently, we decline to review them. See *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 166 n.2, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010).

## II

### THIRD-PARTY CULPABILITY CLAIM

Next, the petitioner claims that Kirschbaum was ineffective because he failed to adequately investigate and present a third-party culpability claim regarding McCoy. The petitioner argues that Kirschbaum should have presented the third-party culpability claim demonstrating ineffective assistance of trial counsel and that if he had, there is a reasonable probability that the outcome of the criminal trial and the first habeas trial would have been different. We are not persuaded.

We begin our analysis of the petitioner's claim by setting forth the applicable legal principles. "It is well established that a defendant has a right to introduce evidence that indicates that someone other than the defendant committed the crime with which the defendant has been charged. . . . The defendant must, however, present evidence that directly connects a third party to the crime. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . .

"The admissibility of evidence of third party culpability is governed by the rules relating to relevancy. . . . Relevant evidence is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Accordingly, in explaining the requirement that the proffered evidence establish a direct connection to a third party, rather than raise merely a bare suspicion regarding a third party, we have stated: Such evidence is relevant, exculpatory evidence, rather than merely tenuous evidence of third party culpability [introduced by a defendant] in an attempt to divert from himself the evidence of guilt. . . . In other words, evidence that establishes a direct connection between a third party and the charged offense is relevant to the central question before the jury, namely, whether a reasonable doubt exists as to whether the defendant committed the offense. Evidence that would raise only a bare suspicion that a third party, rather than the defendant, committed the charged offense would not be relevant to the jury's determination." (Citations omitted; internal quotation marks omitted.) *State* v. *Arroyo*, 284 Conn. 597, 609–10, 935 A.2d 975 (2007).

In the present case, McCoy was the individual identified as a potentially culpable third party. McCoy was detained following the February 14, 1996 shooting but was ultimately released. During the habeas trial, the petitioner testified that he had asked Bodell to investigate McCoy during the underlying criminal trial and had asked Kirschbaum to investigate McCoy in prepara-

tion for the first habeas trial, but neither of them acquiesced in this request. The petitioner testified that he told Kirschbaum: "Mr. McCoy was a material witness. He witnessed the crime. The police even have in their police reports that a witness by the name of Mr. Lindy (phonetic) identified Mr. McCoy as going to the car that was used in the killing. The police pulled Mr. McCoy off the city bus, brought him back to the scene of the crime, and the witnesses, supposedly they identify him. Mr. McCoy was brought to the police station, given an atomic absorption, a gunpowder residue test. He gave testimony or whatever to the police. Gunpowder residue test came back negative and they let him go. They let him go."

Next, the respondent elicited testimony from Kirschbaum regarding his investigation into the third-party culpability issue. Kirschbaum testified: "My recollection is that [McCoy] was the only possible third party culpability witness. I could be wrong about that, but I also recall talking to [the petitioner] about that issue, and I recall thinking about that issue, and the problem [was] that I didn't see how to use it as a third party culpability defense, and I had information, and if it's the person I'm thinking of, and it might not be because it's been awhile, that there was someone that was found going, trying to get into cars on a street that was nearby that may have been a street where the car that the shooter was in had gone to, and it did not seem like a particularly compelling third party culpability defense in that just, mechanically, it didn't sort of make sense." Kirschbaum further testified: "It certainly was a decision that I made and the type of decision that lawyers make, whether it's strategic—whether it was a good strategy or not, I don't know, but I mean it was certainly—it was a lawyer—a decision that I would make as a lawyer." On cross-examination by the petitioner, Kirschbaum acknowledged that the petitioner had asked him to contact McCoy and stated that he had no recollection of asking his investigator to contact or investigate McCoy.

In the memorandum of decision following the habeas trial, the court held: "[A]s to the allegations that Mr. Kirschbaum failed to . . . present evidence in support of third party culpability . . . the court finds that no credible evidence was presented to substantiate the claimed ineffective assistance of prior habeas counsel. The petitioner neither affirmatively proved deficient performance nor, assuming such deficient performance, demonstrated to this court that its confidence in the outcome of the criminal jury trial should be undermined."

On the basis of our review of the record, we find reasonable the habeas court's conclusion that the petitioner failed to affirmatively prove that Kirschbaum's failure to investigate the third-party culpability claim constituted ineffective assistance of counsel. As to the

performance prong of *Strickland*, the petitioner has not demonstrated that Kirschbaum's decision not to investigate a third-party culpability claim involving McCoy was anything other than sound trial strategy. In reviewing ineffective assistance of counsel claims, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 148 Conn. App. 517, 526–27, 85 A.3d 1199, cert. denied, 312 Conn. 901, 91 A.3d 908 (2014).

Here, Kirschbaum opined that he did not think it was a particularly compelling third-party culpability defense in that it "just, mechanically, it didn't sort of make sense." He testified that not investigating McCoy or presenting him as a witness in the first habeas trial was a decision that he made "as a lawyer." The habeas court reasonably concluded that the petitioner had not overcome the presumption that Kirschbaum's conduct fell within the wide range of reasonable professional assistance, and the habeas court properly determined that habeas counsel's performance was not deficient.

Moreover, as to the prejudice prong of *Strickland*, the petitioner has failed to present evidence showing that McCoy had any connection to the shooting. As stated previously, "[t]he defendant must . . . present evidence that directly connects a third party to the crime. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused." (Internal quotation marks omitted.) *State* v. *Arroyo*, supra, 284 Conn. 609. Accordingly, the petitioner has not established that he was prejudiced by Kirschbaum's actions.

For the foregoing reasons, we conclude that the habeas court properly concluded that Kirschbaum did not render ineffective assistance when he failed to investigate a third-party culpability claim.

III

## ALIBI DEFENSE

In his final claim, the petitioner argues that he was denied the effective assistance of trial counsel and, thereafter, habeas counsel, because both Bodell and Kirschbaum failed to investigate and present an alibi defense at the criminal trial and at the first habeas trial. We are not persuaded.

The following testimony, presented at the habeas trial, is relevant to our resolution of this claim. The petitioner testified that he had two alibis for his whereabouts when the shooting took place on February 14, 1996. The first alibi was that he was visiting his sister in New Jersey. The second was that he was in New York buying cocaine to bring back and sell in Bridgeport. The petitioner further testified that he knew his sister would not support his first alibi, which was that he was in New Jersey at the time of the shooting. Thereafter, Kirschbaum testified that although the petitioner had told him about the second alibi, "it was a difficult issue to investigate . . . ." Specifically, Kirschbaum testified: "I do remember that there was an issue of whether there were video cameras at the train station, and whether there was still videotape and whether we could recover that, and I specifically recall having my investigator do that and her reporting to me that—that there was no such videotape available, so I think that is related to the—the trip to New York. I remember talking to [the petitioner] about that, and my—about additional evidence of, you know, people to go find to corroborate that he was in New York working on this drug deal, and I don't have any specific recollection of anyone being interviewed, located or interviewed."

After hearing testimony and reviewing the exhibits, the court issued a memorandum of decision detailing the evidence that had been presented at the habeas trial regarding the petitioner's alibi. The court stated: "Mr. Kirschbaum testified that the only alibi defense the petitioner had apprised trial defense counsel of was the petitioner being with his sister in New Jersey, and it turned out that the sister did not support his alibi. The petitioner testified during the first habeas corpus proceeding that he had another alibi, one that stood in conflict with the previously asserted alibi his sister was to provide, in that he was in New York for a drug deal. The petitioner had apprised Mr. Kirschbaum of this second alibi, and former habeas counsel spoke with his investigator. According to Mr. Kirschbaum, the second alibi was difficult to investigate, but was investigated to the extent possible given the information provided by the petitioner, and therefore remained unsubstantiated." The habeas court concluded: "Given the foregoing, the petitioner failed to prove both deficient performance and the required prejudice. The second alibi was investigated but not substantiated. Additionally, the petitioner has not affirmatively shown that the

second alibi defense that he was in New York when the murder was committed has any merit."

In this appeal, the petitioner claims that Bodell and Kirschbaum were ineffective in failing to further investigate an alibi defense.[6] In his principal brief, the petitioner alleges that the only thing Bodell did to present his alibi defense was put his father, Ahab Testman, on the witness stand at the criminal trial. According to the petitioner, Testman testified at the criminal trial that he gave his son a ride to the train station on February 14, 1996, the day of the shooting, and the petitioner returned one week later. The petitioner claims that Bodell was ineffective in not further investigating his alibi claim and, specifically, in not investigating and discovering the location where the petitioner's train traveled to and the date and time of travel. Furthermore, the petitioner claims that Kirschbaum was ineffective in failing to make any further investigation in preparation for the first habeas trial.

Concluding that "the petitioner has failed to prove both deficient performance and the required prejudice," the habeas court credited Kirschbaum's testimony at the habeas trial. Kirschbaum testified that the second alibi was difficult to investigate but was investigated to the extent possible, given the information provided to him. "The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Internal quotation marks omitted.) *Burgos-Torres* v. *Commissioner of Correction*, 142 Conn. App. 627, 639, 64 A.3d 1259, cert. denied, 309 Conn. 909, 68 A.3d 663 (2013). Although the petitioner claims that he was in New York at the time of the shooting, he did not offer testimony at his habeas trial of any individuals or any evidence that could corroborate this. As a result, he cannot demonstrate, as he must, that Kirschbaum's representation fell below an objective standard of reasonableness or that Kirschbaum's alleged deficient performance prejudiced the petitioner's defense. Accordingly, we find reasonable the habeas court's conclusion that the petitioner failed to prove both deficient performance and the required prejudice with regard to his alibi defense.

Having carefully reviewed the issues raised by the petitioner, we conclude that the habeas court did not err when it concluded that Kirschbaum did not render ineffective assistance.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At oral argument before this court, the petitioner conceded that the only issue raised in this appeal relates to the failure of Kirschbaum to render effective assistance of counsel. The hearing on the present habeas petition

was held by the habeas court, *T. Santos. J.*, and it is that court's judgment that is the subject of this appeal.

[2] At oral argument before this court, the petitioner stated that his nickname is "Kareem" and that Gabree knew of the petitioner because she said she had purchased drugs from him.

[3] In his third petition, the petitioner refers to his appellate counsel as "Susan Zitser." At the habeas trial, however, she spelled her name for the record as "Suzanne Zitser-Curtis." Therefore, we will refer to her as her name appears on the record.

[4] The petitioner failed to reiterate several claims on appeal that he had raised in his third habeas petition. In particular, the petitioner failed to include in his briefing the following allegations against Kirschbaum: (1) failure to present the jury intimidation issue and present testimony from appellate counsel; (2) failure to present the issue that the trial judge should have recused himself because he had previously presided over the probable cause hearing; and (3) failure to present a claim that the jury was not impartial and that the jury instruction was faulty. Additionally, the petitioner failed to include three additional counts in his brief that had been alleged in the third petition. Specifically, these three counts alleged: (1) that the petitioner's trial counsel provided ineffective assistance of counsel; (2) that the petitioner's appellate counsel, Suzanne Zitser-Curtis, provided ineffective assistance of counsel; and (3) actual innocence. The petitioner has not addressed any of the foregoing arguments in his brief to this court, and, therefore, they are deemed abandoned. See *Atkinson* v. *Commissioner of Correction*, 125 Conn. App. 632, 636 n.5, 9 A.3d 407 (2010), cert. denied, 300 Conn. 919, 14 A.3d 1006 (2011).

[5] Along with his claims about Sierra, Johnston, and Birch, the petitioner claims in his principal brief to this court that there were circumstances surrounding the testimony of Gabree and Sheriff Michael Gariano that should have made both Bodell and Kirschbaum conduct further investigation. The petitioner did not raise these specific claims in his third petition, and they were not addressed in the habeas court's memorandum of decision. Therefore, we decline to review them. See *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 166 n.2, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010).

[6] In his principal brief to this court, the petitioner does not make it clear which alibi he is referring to, as his alibis have continued to evolve from his criminal trial to his second habeas trial. He simply alleges in the brief that his trial counsel and habeas counsel did not investigate his "alibi claim . . . ." For purposes of our analysis, we will analyze his first alibi and his second alibi together as one alibi defense.